■ In the Matter of CONCETTA LOPEZ, Individually and as Representative of FELIX LOPEZ, Appellant, v COMMISSIONER OF NEW YORK STATE DEPARTMENT OF HEALTH et al., Respondents. [839 NYS2d 827]—

Cardona, P.J. Appeal from a judgment of the Supreme Court (Ceresia, Jr., J.), entered May 11, 2006 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Commissioner of Health denying petitioner's request for medical assistance.

Petitioner challenges the denial of the Medicaid application filed on behalf of her husband, Felix Lopez,[1] seeking assistance with his nursing home care expenses. Medicaid is a jointly funded state and federal medical assistance program aimed at assisting those eligible individuals whose income and resources are insufficient to cover the cost of necessary medical care (*see* 42 USC § 1396 *et seq.*; Social Services Law § 363 *et seq.*). To protect the spouse who resides in the community (hereinafter community spouse) from becoming impoverished by being forced to liquidate nearly all of the couple's joint assets before the institutionalized spouse will qualify for Medicaid, the Medicare Catastrophic Coverage Act was enacted in 1988 (hereinafter MCCA; *see Matter of Golf v New York State Dept. of Social Servs.*, 91 NY2d 656, 659 [1998]; *Matter of Tomeck*, 29 AD3d 156, 158 [2006], *mod* 8 NY3d 724 [2007], citing 42 USC § 1396r-5; Social

---

1. Lopez died during the course of the administrative process.

Services Law § 366-c; 18 NYCRR 360-4.10). The MCCA allots to the community spouse a minimum level of monthly income known as the minimum monthly maintenance allowance (hereinafter MMMA) and also permits the community spouse to retain a certain amount of assets referred to as a community spouse resource allowance (hereinafter CSRA; see 42 USC § 1396r-5 [d] [3]; [f] [2]; Social Services Law § 366-c [2] [d], [h]). Any income or assets exceeding these levels must be expended before the institutionalized spouse is eligible for Medicaid. In the event the community spouse's income is below the MMMA, he or she "can obtain an increase in his or her CSRA, such that the additional assets in the CSRA will generate the income needed to bring the community spouse['s] income up to the MMMA" (Matter of Tomeck, supra at 158, citing 42 USC § 1396r-5 [e] [2]; Social Services Law § 366-c [8] [c]).

Turning to the matter herein, the record establishes that, in conjunction with a 2003 Medicaid application filed on behalf of Lopez, petitioner filed a spousal refusal form refusing to make her income and resources available for his care. Respondent Commissioner of Social Services of Dutchess County (hereinafter DSS) deemed Lopez ineligible for medical assistance due to his excess resources and denied the application. Lopez then requested a fair hearing to review that determination and, notwithstanding the spousal refusal, sought an increased CSRA for petitioner. Following various hearings and a remand to recalculate the resources of Lopez and petitioner, respondent Commissioner of Health (hereinafter Commissioner) ultimately affirmed DSS's decision denying Lopez's Medicaid eligibility due to his excess resources of $198,439.80. In addition, although it was undisputed that petitioner's calculated income of $2,147.44 was insufficient to meet the MMMA of $2,232,[2] the Commissioner determined that it was unnecessary to increase petitioner's CSRA because she could meet or exceed the MMMA by electing to increase her monthly withdrawal from her annuity (valued at $202,486.60).

Thereafter, petitioner, individually and on behalf of Lopez, commenced this proceeding challenging respondents' determinations. She argues that (1) respondents violated the antialienation provisions of the Social Security Act by attributing Lopez's Social Security income to her income, (2) DSS double-

---

2.  Although the 2003 MMMA was $2,267, respondents, as well as Supreme Court, applied the 2002 MMMA of $2,232 in their calculation. Because there is a shortfall in petitioner's income regardless of the MMMA used, our analysis is the same despite the figure used.

counted income produced from her annuity in calculating her available income, (3) she cannot be compelled to withdraw additional funds from her annuity, and (4) respondents improperly disregarded her spousal refusal form. She also requested an award of counsel fees pursuant to 42 USC §§ 1983 and 1988. Supreme Court dismissed the petition and this appeal ensued.

Initially, we agree with Supreme Court that petitioner did not preserve the anti-alienation and double-counting claims at the July 2005 fair hearing. With respect to the calculations, Lopez's representative stated on the record at that hearing that "we agree with the . . . figures, as far as the income and the resources for [Lopez and petitioner]." Since these claims are unpreserved, we have no discretionary authority or interest of justice jurisdiction to review them (*see Matter of Khan v New York State Dept. of Health*, 96 NY2d 879, 880 [2001]; *Matter of Klapak v Blum*, 65 NY2d 670, 672 [1985]; *Matter of Shelton v Wing*, 256 AD2d 1143, 1144 [1998]).

We next turn to petitioner's contention that DSS improperly included in her monthly income the total amount of additional funds that could be withdrawn from her existing annuity without penalty. It is undisputed that petitioner was entitled to withdraw annually up to 10% of the value of her annuity without penalty, but she elected to withdraw only $500 per month. According to petitioner, withdrawing 10% annually would force her to deplete the principal of the annuity and spend down her resources thereby defeating the policy behind allowing a community spouse to receive an increased CSRA to generate income sufficient to meet the MMMA. However, petitioner bears the burden of establishing entitlement to Medicaid (*see Matter of Rogers v Novello*, 26 AD3d 580, 581 [2006]; *Matter of Bendtson v New York State Dept. of Social Servs.*, 166 AD2d 853, 855 [1990]), and we agree with Supreme Court that this argument is speculative. Indeed, petitioner offers no documentation or proof regarding the nature of the annuity or what portion of the increased monthly annuity payment would constitute principal as opposed to income. In that regard, we find it notable that respondents are not asserting that the full withdrawal of 10% of the annuity is required to eliminate the shortfall in her MMMA. Moreover, requiring petitioner to maximize her available income is consistent with Medicaid's policy "to end th[e] pauperization [of the community spouse] by assuring that [he or she] has a sufficient—but not excessive—amount of income and resources to live comfortably when the other spouse [is] institutionalized" (*Matter of Golf v New York State Dept. of Social Servs.*, 91 NY2d 656, 659 [1998], *supra*

[internal quotation marks and citations omitted]) and "not to permit the sheltering of personal wealth at public expense" (*id.* at 671). Given petitioner's failure of proof, respondents' conclusion that petitioner can withdraw additional funds from her annuity in order to meet the MMMA is not arbitrary or capricious.

We do agree with petitioner's contention that her spousal refusal should have been considered in determinating Lopez's Medicaid eligibility. Although petitioner chose to pursue an increased CSRA in an attempt to retain the excess resources in order to generate additional income, the fair hearing transcript indicates that in the event petitioner did not prevail in that regard, in the alternative, petitioner sought consideration of the spousal refusal. Since the spousal refusal form was not considered in determining Lopez's eligibility for Medicaid, and finding nothing under the circumstances herein precluding petitioner from asserting that statutory right (*see* 42 USC § 1396r-5; Social Services Law § 366; 18 NYCRR 360-4.10; *see e.g. Matter of Tomeck*, 29 AD3d 156, 158 [2006], *supra*), this matter is remitted for that purpose.

Finally, under these circumstances, petitioner is not entitled to counsel fees pursuant to 42 USC §§ 1983 and 1988 (*see Matter of Giaquinto v Commissioner of N.Y. State Dept. of Health*, 39 AD3d 922, 923-924 [2007]).

Peters, Spain, Carpinello and Rose, JJ., concur. Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as found petitioner's spousal refusal withdrawn; matter remitted to respondent Commissioner of Health for a determination of Felix Lopez's Medicaid eligibility taking into account petitioner's spousal refusal; and, as so modified, affirmed.